# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

GWENDOLYN E. LONG,

        **Plaintiff,**

    v.                        **Civil Action 2:19-cv-4247**
                                    **Chief Judge Algenon L. Marbley**
COMMISSIONER OF SOCIAL          **Magistrate Judge Chelsey M. Vascura**
SECURITY,

        **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Gwendolyn E. Long ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for a period of disability and disability insurance benefits. This matter is before the undersigned for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 11), the Commissioner's Memorandum in Opposition (ECF No. 13), and the administrative record (ECF No. 8). For the reasons that follow, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED**.

## I.      PROCEDURAL HISTORY

On December 12, 2013, Plaintiff filed the subject application for period of disability and disability insurance benefits under Title II of the Social Security Act (the "Act"). (R. at 305.) In her application, Plaintiff alleged a disability onset of February 17, 2009. (*Id.*) Plaintiff's application was denied initially on April 1, 2014, and upon reconsideration on August 5, 2014. (*Id.* at 186–88, 192–94.) Plaintiff sought a hearing before an administrative law judge ("ALJ").

(*Id*. at 195.) ALJ Paul E. Yerian issued a decision on June 30, 2017, finding that Plaintiff was not disabled within the meaning of the Act. (*Id*. at 156–69.) On February 23, 2018, the Appeals Council vacated ALJ Yerian's decision and remanded the case to ALJ Timothy Gates for consideration of new and material evidence and further consideration of treating source opinions. (*Id*. at 170–73.) ALJ Gates held a hearing on August 3, 2018, at which Plaintiff, represented by counsel, appeared and testified. (*Id*. at 17.) Vocational expert Charlotta Ewers (the "VE") appeared and testified by phone at the hearing. (*Id*.) On August 31, 2018, ALJ Gates issued a decision finding that Plaintiff was not disabled within the meaning of the Act. (*Id.* at 14–37.) On July 24, 2019, the Appeals Council denied Plaintiff's request for review and adopted ALJ Gates' decision as the Commissioner's final decision. (*Id*. at 1–6.) Plaintiff then timely commenced the instant action. (ECF No. 1.)

In her Statement of Errors (ECF No. 11), Plaintiff argues that remand is required because ALJ Gates failed to properly evaluate the evidence and treating source opinions. Although at times unclear, the undersigned interprets Plaintiff's Statement of Errors as advancing the following three specific contentions of error: (1) ALJ Gates failed to properly evaluate the opinions of her treating physicians, Drs. Kistler and Hackshaw; (2) ALJ Gates failed to properly consider Plaintiff's fibromyalgia; and (3) ALJ Gates' assessment of Plaintiff's residual functional capacity ("RFC") is not supported by substantial evidence. The undersigned finds that each of Plaintiff's contentions of error lacks merit.

## II.    THE ADMINISTRATIVE DECISION

On August 31, 2018, ALJ Gates issued a decision finding that Plaintiff was not disabled within the meaning of the Act. (R. at 14–37.) ALJ Gates first found that Plaintiff meets the insured status requirements through December 31, 2013. (*Id*. at 21.) At step one of the

sequential evaluation process,[1] ALJ Gates found that Plaintiff had not engaged in substantially

gainful activity since February 17, 2009, the alleged onset date of Plaintiff's disability. (*Id.*) At

step two, ALJ Gates found that Plaintiff had the following severe impairments: fibromyalgia;

obesity; degenerative disc disease of the lumbar spine; and arthritis of the hips. (*Id.*) At step

three, ALJ Gates found that Plaintiff did not have an impairment or combination of impairments

that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404,

Subpart P, Appendix 1. (*Id.* at 22.)

At step four, ALJ Gates set forth Plaintiff's RFC as follows:

> Through the date last insured, the claimant had the residual functional capacity
> (RFC) to perform light work as defined in 20 C.F.R. 404.1567(b)[2] except she

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step
sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive
finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th
Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the
   criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20
   C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his
   or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual
   functional capacity, can the claimant perform other work available in the national
   economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009);
*Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying
of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in
this category when it requires a good deal of walking or standing, or when it involves sitting
most of the time with some pushing and pulling of arm or leg controls. To be considered capable
of performing a full or wide range of light work, you must have the ability to do substantially all
of these activities. If someone can do light work, we determine that he or she can also do
sedentary work, unless there are additional limiting factors such as loss of fine dexterity or
inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

could frequently climb ramps and stairs, and occasionally stoop, kneel, crouch, and crawl, but never climb ladders, ropes, or scaffolds. She needed to avoid workplace hazards.

(*Id.* at 23.) In assessing Plaintiff's RFC, ALJ Gates considered the evidence of record, including: treatment notes and clinical records from various medical providers; Plaintiff's hearing testimony; records pertaining to a 2009 workers' compensation claim; and medical opinion evidence from several sources.[3] (*Id.* at 23–28.) Relevant to this appeal, ALJ Gates assigned "partial weight" to the March 21, 2014 opinion of consultative examiner, Troy Howard, M.D., on the basis that, with two exceptions, his opinion was well-supported by the record. (*Id.* at 27.) ALJ Gates assigned "great weight" to each the March 2014 opinion of State agency medical consultant Uma Gupta, M.D. and the July 2014 opinion of State agency medical consultant Edmond Gardner, M.D., on the basis that the opinions were "most consistent with the overall record and supported by the medical evidence of record." (*Id.* at 26.) ALJ Gates further found that the opinions of Plaintiff's treating physicians, Charles J. Kistler, D.O. and Kevin V. Hackshaw, M.D., were "not well supported by medically-acceptable clinical and laboratory techniques and [were] inconsistent with the other substantial evidence in the case record." (*Id.* at 26–27.)

---

[3] Plaintiff filed prior applications for period of disability, disability insurance benefits, and supplemental security income in September 2004. (R. at 177.) Those applications were denied initially and upon reconsideration. (*Id.*) Plaintiff sought a hearing before an ALJ. On or around April 24, 2008, ALJ Paul R. Armstrong issued a decision finding that Plaintiff was not disabled within the meaning of the Act. (*Id.* at 174–85. *See also* Def.'s Mem. in Opp'n at 3, n. 2, ECF No. 13.) ALJ Armstrong's decision became the final determination of the Commissioner with respect to the September 2004 applications. The principles of *res judicata* provide that, in the absence of new and material evidence or changed circumstances, a subsequent ALJ is bound by the findings of a previous ALJ or Appeals Council decision. *See* Social Security Acquiescence Rulings 98-3(6), 98-4(6); *Dennard v. Sec'y of Health and Hum. Servs.*, 907 F.2d 598 (6th Cir. 1990); *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997) as modified by *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929 (6th Cir. 2018). ALJ Gates assessed a less restrictive RFC than ALJ Armstrong. However, the parties do not dispute that ALJ Gates properly considered ALJ Armstrong's decision.

At step five of the sequential process, ALJ Gates found that Plaintiff was not capable of performing past relevant work as a mail handler and material handler. (*Id.* at 28.) Relying on the VE's testimony, ALJ Gates found that jobs exist in significant numbers in the national economy for an individual with Plaintiff's age, education, work experience, and RFC. (*Id*. at 28–29.) Examples include office mail clerk, office helper, and warehouse checker. (*Id*. at 29.) ALJ Gates further found that Plaintiff was capable of making a successful adjustment to such employment. (*Id*.) ALJ Gates therefore concluded that Plaintiff was not disabled under the Act for the period of February 17, 2009 through December 31, 2013. (*Id.* at 30.)

Plaintiff now argues that ALJ Gates committed reversible error by (1) failing to properly evaluate the opinions of treating physicians, Drs. Kistler and Hackshaw, (2) failing to properly consider Plaintiff's fibromyalgia, and (3) assessing an RFC that is not supported by substantial evidence. (Pl.'s Statement of Errors, ECF No. 11.)

### III. RELEVANT EVIDENCE OF RECORD

The undersigned will limit discussion of the evidence to those portions pertinent to Plaintiff's contentions of error.

### A. Office of Workers' Compensation Programs Files

On February 17, 2009, Plaintiff sustained an on-the-job back injury while carrying a heavy box. At the time, Plaintiff was employed by the United States Postal Service ("USPS") as a service and distribution clerk. Her responsibilities included carrying, sorting, and loading postal material (*e.g.*, boxes and parcels) weighing up to 70 pounds. Her then-primary care physician, Charles J. Kistler, D.O., diagnosed the injury as an acute lumbar sprain/strain, resulting in bulged discs and aggravating Plaintiff's existing fibromyalgia. (R. at 2035-36.) Following her injury, Plaintiff filed a claim for federal workers' compensation benefits administered by the Office of Workers' Compensation Programs ("OWCP"). The claim file

comprises the bulk of the record evidence in this case.  The relevant portions are summarized below.

### 1.  Medical Opinion Evidence

Dr. Kistler submitted periodic reports on Plaintiff's status to OWCP.  Each report included a worksheet that listed work-related activities (such as sitting, standing, walking, lifting, climbing, kneeling, twisting, etc.) and provided space for a treating physician to indicate the number of hours each day that the claimant could perform those activities.  On every report included in the record, Dr. Kistler drew a zero at the top of the worksheet and an arrow extending to the bottom—in other words, opining that Plaintiff could not perform any of these activities for any amount of time.  (*See, e.g., id.* at 1005, 1220, 1468, 1497, 1761, 1859, 1928, 1944, 1955, 1962, 1979, 2000, 2068, 2072, 2074.)  On occasion, Dr. Kistler predicated Plaintiff's performance of work-related activities on receipt of treatment, such as physical therapy.  (*See, e.g., id.* at 1267–68, 1841.)  Dr. Kistler also submitted multiple letter reports to OWCP, which included his opinion that Plaintiff was "totally disabled" or "permanently and totally impaired." (*Id.* at 1989–91, 2035–38, 2078–79.)

On September 3, 2010, Plaintiff was examined at OWCP's request by David Halley, M.D.  (*Id.* at 1752–57.)  Dr. Halley also reviewed Plaintiff's medical records, including many from Dr. Kistler.  (*Id.*)  In his report, Dr. Halley opined that Plaintiff had "returned to her baseline condition prior to the work injury," and any persistent pain stemmed from Plaintiff's pre-existing conditions.  (*Id.*)  To resolve the conflict between the opinions of Dr. Kistler and Dr. Halley, OWCP engaged Ralph Rohner, M.D. to serve as a medical referee.  Dr. Rohner also examined Plaintiff and her medical records.  (*Id.* at 1461–66.)  In his initial report, dated March 8, 2011, Dr. Rohner agreed with Dr. Halley that Plaintiff's remaining symptoms were attributable to pre-existing conditions and not her workplace injury.  (*Id.*)  However, due to her

absence from the workforce during the preceding two years, Dr. Rohner opined in a follow-up report dated October 17, 2011, that Plaintiff could perform only sedentary work until she completed physical therapy and a re-conditioning program. (*Id*. at 1478–80.)

### 2. USPS Office of Inspector General Investigative Report

OWCP also considered an investigative report by the USPS Office of Inspector General ("OIG"). (*Id*. at 933–52.) A USPS OIG investigator surveilled Plaintiff over the course of four non-consecutive days in November 2011. (*Id*.) The investigator observed Plaintiff driving, pushing a shopping cart, carrying grocery bags with one hand, lifting and loading bags into her SUV, opening and closing the tailgate of her SUV with one hand, and bending down to pick up items off the ground on multiple occasions. (*Id*.) The investigator noted in each day's surveillance report that Plaintiff "did not appear to exhibit any signs of pain or discomfort." (*Id*.) However, in an interview with another OIG agent on December 6, 2011, Plaintiff stated that "she is unable to do any household chores and cannot shovel snow or cut grass or run the vacuum cleaner." (*Id*. at 942–43.) She further stated that "she has difficulty walking and cannot bend over," "if she were to bend over it would really hurt," "she does not know how much weight she can lift," it "hurts her to sit and drive," and "she seldom leaves her house." (*Id*.)

### B. Medical Records from Plaintiff's Treating Physicians

The record also contains a number of treatment notes documenting Plaintiff's visits with various physicians. Dr. Kistler was Plaintiff's primary care physician at the time of her 2009 injury and for several years thereafter. Although Dr. Kistler's notes consistently reflect that Plaintiff reported back pain and requested prescription drug refills, the remaining content is entirely hand-written and largely illegible. (*See, e.g., id*. at 1245, 1247, 1248, 1270, 1306, 1397–1402, 1484, 1495, 1523, 1524, 1571, 1626, 1630, 1631, 1655, 1689, 1694, 1764, 1766, 1824–25,

1857, 1861, 1871, 1883, 1903, 1933–35, 1951, 1953, 1956–58, 1992, 2012, 2021, 2031–34, 2045, 2060.)

Plaintiff was also regularly treated by rheumatologist Kevin V. Hackshaw, M.D. The record contains treatment notes from Dr. Hackshaw beginning in January 2008 and for roughly every six months thereafter. (*See, e.g., id*. at 821–52.) Dr. Hackshaw diagnosed Plaintiff with osteoarthritis and fibromyalgia. (*Id*.) According to his treatment notes, Plaintiff regularly reported generalized pain and aches, along with numbness and tingling in her hands. (*Id*.) Although Plaintiff's physical exam results were largely normal, Dr. Hackshaw documented that Plaintiff experienced greater than 11 out of 18 tender points with mild hyperalgesia, indicative of fibromyalgia. (*Id*.) Dr. Hackshaw sought to alleviate Plaintiff's symptoms by prescribing medication and recommending that Plaintiff engage in diet and exercise with the goal of losing weight. (*Id*.) At the outset of their treatment relationship, Dr. Hackshaw noted that "[t]he issue with [fibromyalgia] is that I believe she is going to have as much pain whether she is at home or whether she is at the job, so the main thing is to try and improve her quality of life while she continues to have the pain." (*Id*. at 822–24.)

## C.    Additional Medical Opinion Evidence

As noted above, the record includes medical opinion evidence from various sources, including a consultative examiner, State agency medical consultants, and Plaintiff's treating physicians.

### 1.   Consultative Examiner

Troy Howard, M.D. was engaged by the Division of Disability Determinations to perform a consultative examination of Plaintiff. (*Id*. at 451–57.) Following a March 21, 2014 examination, Dr. Howard recorded generally normal physical exam results, but noted that

Plaintiff "has painful tender points that are elicited in greater than 11 out of 18 sites with mild

hyperalgesia." (*Id.* at 452.) Dr. Howard's report concludes as follows:

> Given the above history and physical examination and history significant for
> fibromyalgia and she would likely benefit from weight loss. [*sic*] However, in her
> current state I would limit her work duties to light work duties and would advise
> her to not lift more than 20 pounds at a time nor stand for longer than 6 hours total
> in a day assuming she is given frequent breaks and preferably allowed duties within
> a sitting position at a desk. She is highly educated and would do well in standard
> employment of this fashion.

(*Id.* at 453.)

## 2. State Agency Medical Consultants

Plaintiff's claim file was reviewed initially by Uma Gupta, M.D. On March 31, 2014,

Dr. Gupta opined that Plaintiff could: occasionally lift/carry 20 pounds; stand, walk, or sit for six

hours in an eight-hour workday; frequently climb ramps and stairs but never climb ladders,

ropes, or scaffolds; and occasionally stoop, kneel, crouch, or crawl. (*Id.* at 139–41.) In addition,

Plaintiff should avoid all exposure to workplace hazards. (*Id.* at 141.) Dr. Gupta attributed the

opined postural and environmental limitations, in part, to Plaintiff's diagnoses of osteoarthritis

and fibromyalgia. (*Id.* at 140.) In developing her opinion, Dr. Gupta considered, *inter alia*,

certain of Dr. Hackshaw's treatment notes from 2013 showing diagnoses of fibromyalgia and

osteoarthritis. (*Id.* at 136–37, 139.) She also considered and gave great weight to Dr. Howard's

report. (*Id.*) Finally, Dr. Gupta found that Plaintiff's "statements that she can't sit, stand or walk

for long periods of time are not consistent with the totality of the evidence in file." (*Id.* at 138.)

Dr. Gupta's opinion was reiterated in full by Edmond Gardner, M.D., who evaluated

Plaintiff's claim file on reconsideration. (*Id.* at 150–52.)

### 3. Treating Rheumatologist

The record contains a letter opinion dated February 3, 2012, from Plaintiff's treating rheumatologist, Kevin V. Hackshaw, M.D. (*Id*. at 2080.) Therein, Dr. Hackshaw, opined as follows:

> [Plaintiff] was seen for follow up of her [osteoarthritis] and Fibromyalgia. She has not worked since Feb 17 2009 during which she was carrying a box which lead to her 'pulling' something in the low back. She has had documented bulging discs in the low back area following this injury. She is apparently having intermittent numbness of the legs. . . .
>
> She was formerly at the Post Office and finds that she can't work in that setting anymore. The office duties involve repetitive bending to get tubs and trays out of APC's, hampers, etc., lifting of packages and unloading of mail trucks. Per patient these activities are all repetitive. In my medical opinion, her current physical condition makes her unemployable in a setting where this repetitive activity is needed.

(*Id*.) It is unclear whether this letter was drafted for the purpose of Plaintiff's workers' compensation claim, a Social Security disability claim, or otherwise.

More than six years later, on August 6, 2018, Dr. Hackshaw completed a Medical Source Statement in which he rendered an opinion bearing on Plaintiff's physical and mental abilities to perform work-related activities. (*Id*. at 2318–23.) As to her physical abilities, Dr. Hackshaw opined that Plaintiff could: occasionally lift/carry ten pounds; occasionally engage in reaching, handling, and fingering; stand for three hours in an eight-hour workday and for 15 minutes at a time; walk for 15 minutes in an eight-hour workday and for five minutes at a time; sit for six hours in an eight-hour workday and for 30 minutes at a time; never utilize repetitive foot controls; and occasionally bend, but never crouch, squat, crawl, or climb steps or ladders. (*Id*. at 2318–19.) Dr. Hackshaw further opined that Plaintiff's condition would likely deteriorate in a work environment and that she would be absent two or more days each month on account of her

condition.  (*Id*. at 2319–20.)  Finally, Dr. Hackshaw indicated that his assessment was premised upon Plaintiff's diagnoses of fibromyalgia and osteoarthritis.  (*Id*. at 2320.)

As to her mental abilities, Dr. Hackshaw opined that Plaintiff was moderately[4] impaired in all areas related to social interaction and adaptation, with marked impairment in her ability to tolerate customary work pressures.  (*Id*. at 2321–23.)  He further opined that Plaintiff's condition would likely deteriorate in a work environment and she would be absent five or more days each month on account of her condition.  (*Id*. at 2323.)

## IV.    STANDARD OF REVIEW

When reviewing a case under the Act, the Court "must affirm the  Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to  proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009)  (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. §  405(g) ("The findings of the Commissioner [ ] as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial.  The Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial

---

[4] The form Dr. Hackshaw completed defines the "Moderate" level as "[u]nable to function in this area from 11% to 25% of the work day or work week," and "Marked" as "[u]nable to function in this area from 25% to 50% of the work day or work week."  (R. at 2321.)

11

evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

## V.    ANALYSIS

### A.    ALJ Gates Properly Considered the Treating Physicians' Opinions

The first issue Plaintiff raises in her Statement of Errors (ECF No. 11) is that ALJ Gates failed to properly evaluate the opinion evidence of her treating physicians, Drs. Kistler and Hackshaw.[5]  An ALJ must consider all medical opinions that he receives in evaluating a claimant's case.  20 C.F.R. § 404.1527(c).  When a treating physician's opinion is submitted, the ALJ generally gives deference to it "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and

---

[5] Plaintiff also asserts that ALJ Gates improperly discounted the opinion of Dr. Rohner "on the basis that his medical opinion was grounded in the claimant's 'subjective complaints.'"  (Pl.'s Statement of Errors at 11, ECF No. 11.)  Plaintiff appears to conflate the decisions of ALJ Yerian and ALJ Gates.  In so doing, Plaintiff actually objects to ALJ *Yerian*'s reasons for discounting Dr. Rohner's opinion (*i.e.*, the opinion was afforded little weight because "it is based mainly on the claimant's subjective complaints") (R. at 163–64), and not ALJ *Gates*' reasons (*i.e.*, the opinion was afforded little weight because "deconditioning is not a basis for federal disability and Dr. Rohner acknowledged the lack of true physical exam findings, as well as indicating that his assessments were for a short duration") (*Id*. at 27).  ALJ Yerian's decision was vacated by the Appeals Council.  (*Id*. at 171.)  As a result, Plaintiff's argument with respect to the treatment of Dr. Rohner's opinion is not well-taken.

may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical filings alone . . . ." 20 C.F.R. § 404.1527(c)(2); *Blakley*, 581 F.3d at 406 (internal quotations omitted). If the treating physician's opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight." 20 C.F.R. § 404.1527(c)(2).

If the ALJ does not assign controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Specifically, if an ALJ does not give a treating physician's opinion controlling weight:

> [A]n ALJ must apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion.

*Id.* Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] [a claimant's] treating source's opinion." 20 C.F.R. § 404.1527(c)(2). Accordingly, the ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550 (6th Cir. 2010) (internal quotation omitted). The United States Court of Appeals for the Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999). The requirement also ensures that the ALJ applies the treating physician

rule and permits meaningful review of the ALJ's application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544–45. Thus, the reason-giving requirement is "particularly important when the treating physician has diagnosed the claimant as disabled." *Germany-Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242). There is no requirement, however, that the ALJ "expressly" consider each of the *Wilson* factors within the written decision. *See Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010) (indicating that, under *Blakley* and the good reason rule, an ALJ is not required to explicitly address all of the six factors within 20 C.F.R. § 404.1527(c)(2) for weighing medical opinion evidence within the written decision).

Finally, the Commissioner reserves the power to decide certain issues, such as a claimant's RFC and a determination on whether a claimant meets the statutory definition of "disabled." 20 C.F.R. § 404.1527(d). Although the ALJ will consider opinions of treating physicians "on the nature and severity of [a claimant's] impairment(s)," opinions on issues reserved to the Commissioner are generally not entitled to special significance. 20 C.F.R. § 404.1527(d); *Turner v. Comm'r of Soc. Sec.*, 381 F. App'x 488, 492–93 (6th Cir. 2010).

As noted above, ALJ Gates discounted the opinions of both Drs. Kistler and Hackshaw. (R. at 26–27.) Spanning the years 2009 through 2012, Dr. Kistler repeatedly opined that Plaintiff was unable to perform any work-related activities, and described her as either totally disabled or unable to return to her past work. Each of Dr. Kistler's opinions were rendered for purposes of Plaintiff's workers' compensation claim. In February 2012, Dr. Hackshaw opined that Plaintiff was unable to perform repetitive bending, lifting, and unloading. In August 2018, Dr. Hackshaw further opined that Plaintiff's physical and mental impairments substantially limited her ability to work.

ALJ Gates explained his reasons for discounting these opinions as follows:

> Although Dr. Kistler and Dr. Hackshaw are "treating sources" as defined in the regulations, their opinions concerning [Plaintiff's] disability status are not well supported by medically-acceptable clinical and laboratory diagnostic techniques, and are inconsistent with other substantial evidence in the case record. With respect to their conclusory statements regarding disability or employability, the question of disability is a matter reserved for the Commissioner (20 CFR 404.1527(d)). To the extent they offered assessments in the context of a worker's compensation case, they are not particularly relevant to a determination of specific work-related abilities within the context of determining federal disability. Most importantly, their restrictive assessments are inadequately supported by their own treatment notes and the treatment and exam findings of others of record. Indeed, Dr. Kistler's treatment notes are handwritten with sparse documentations of objective findings, and Dr. Hackshaw's treatment notes revealed a normal gait and range of motion despite findings of tender points on exam, with no documentation of muscle atrophy that one would expect with long-term limited use of the extremities. Rather, as summarized above, Dr. Hackshaw's treatment notes document that he recommended diet and increased physical activity. With respect to Dr. Hackshaw's assessed mental limitations, the undersigned notes that Dr. Hackshaw is not a mental health professional with the particular expertise to make such an assessment. Moreover, the assessment was many years after the date last insured and there is no documentation of even a medically determinable mental impairment during the period at issue. Finally, the opinions of Dr. Kistler and Dr. Hackshaw are inconsistent with [Plaintiff's] observed activities during the [ ] USPS OIG report.

(*Id.*)

The undersigned finds no error with ALJ Gates' consideration and weighing of the opinions of Plaintiff's treating physicians. ALJ Gates properly declined to afford these opinions controlling weight and articulated his reasons for doing so. ALJ Gates gave four reasons for discounting Dr. Kistler's opinions: (i) many of the opinions were statements of disability, an issue reserved for the Commissioner (*see* 20 C.F.R. § 404.1527(d)(1)*; Turner*, 381 F. App'x at 492–93); (ii) because the opinions were rendered for purposes of a workers' compensation claim, they were not particularly relevant to determining disability under the Act (*see Crawford v. Comm'r of Soc. Sec.*, No. 1:17-cv-723, 2018 WL 6625124, at *16 (S.D. Ohio Dec. 18, 2018) (an ALJ is not bound to credit a treating physician's opinion that the plaintiff was disabled where the opinion was rendered for purposes of a state workers' compensation claim), *report and*

*recommendation adopted*, No. 1:17-cv-723, 2019 WL 591492 (S.D. Ohio Feb. 13, 2019); 20

C.F.R. § 404.1504); (iii) the severity of limitations assessed in Dr. Kistler's opinions was

unsupported by his sparse treatment records (*see* 20 C.F.R. § 404.1527(c)(3)); and (iv) the

severity of limitations assessed in Dr. Kistler's opinions was inconsistent with the other evidence

of record, including the USPS OIG investigative report (*see* 20 C.F.R. § 404.1527(c)(4)).  ALJ

Gates discounted Dr. Hackshaw's opinions for many of the same reasons.  In addition, as to Dr.

Hackshaw's 2018 opinion bearing on Plaintiff's mental abilities, ALJ Gates noted that such

assessment was outside of Dr. Hackshaw's specialties of internal medicine and rheumatology.[6]

*See* 20 C.F.R. § 404.1527(d)(5).  These are all valid reasons for discounting a medical opinion—

even that of a treating physician.  The undersigned therefore concludes that ALJ Gates did not

violate the treating physician rule or otherwise err in his consideration and weighing of Dr.

Kistler's opinions.

Without saying as much, Plaintiff seems to argue that ALJ Gates' reasons for discounting

the opinions of Drs. Kistler and Hackshaw are not "good reasons."  (Pl.'s Statement of Errors,

ECF No. 11.)  Specifically, Plaintiff argues that ALJ Gates: improperly "relied" on laboratory

diagnostic techniques to discount the opinions (*Id*. at 9); improperly assigned greater weight to

the opinions of the State agency medical consultants (*Id*. at 10); overemphasized evidence of Dr.

Hackshaw's conservative treatment of Plaintiff's condition (*Id*. at 14); and incorrectly

characterized the opinions as inconsistent with the record (*Id*. at 12).  None of these arguments is

persuasive. The undersigned will address each in turn.

---

[6] ALJ Gates also found no evidence that Plaintiff had any mental impairment as of the date she
was last insured.  Plaintiff does not dispute that finding in her Statement of Errors.

First, Plaintiff argues that ALJ Gates improperly sought support for the treating physicians' opinions with evidence procured by laboratory diagnostic techniques. However, pursuant to regulation, an ALJ will give controlling weight to a treating physician's opinion *if and only if* it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(d)(2). Both the Social Security Administration and the Sixth Circuit have acknowledged that fibromyalgia is often diagnosed principally through subjective reports of pain, as opposed to through a definitive laboratory test. *See* SSR 12-2p, 2012 WL 3104869, at *2 (July 25, 2012); *Rogers*, 486 F.3d at 243. Nonetheless, the regulation's requirement remains intact. *See* SSR 12-2p, at *3 ("As in all claims for disability benefits, we need objective medical evidence to establish the presence of [a medically-determinable impairment]."). It was therefore reasonable and appropriate for ALJ Gates to consider, among other factors, the lack of medically-acceptable clinical and laboratory diagnostic evidence supporting the physicians' opinions.

Next, Plaintiff argues that ALJ Gates erred by assigning greater weight to the State agency medical consultants' opinions than those of the treating physicians. Plaintiff asserts that "a treating physicians [*sic*] opinion is entitled to weight substantially greater than that of a non-examining medical advisor or a physician who saw plaintiff only once." (Pl.'s Statement of Errors at 10, ECF No. 11.) Although Plaintiff purports to quote the language of 20 C.F.R. § 404.1527(c) (describing how the Commissioner evaluates and weighs medical opinion evidence), the undersigned cannot find the quoted language anywhere in the regulation (or the two cases also included in the citation). In contrast to Plaintiff's assertion, relevant authority provides that "[i]n appropriate circumstances, opinions from State agency medical . . .

consultants . . . may be entitled to greater weight than the opinions of treating or examining sources."  SSR 96-6p, 1996 WL 374180, *3; *see also Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 834 (6th Cir. 2016) (State agency medical consultants are "highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act;" thus, in some cases, "an ALJ may assign greater weight to a state agency consultant's opinion than to that of a treating . . . source." (first alteration in original) (internal quotation marks omitted)); *Hoskins v. Comm'r of Soc. Sec.*, 106 F. App'x 412, 415 (6th Cir. 2004) ("State agency medical consultants are considered experts and their opinions may be entitled to greater weight if their opinions are supported by the evidence.").  Plaintiff also argues that "[t]o the extent that the ALJ relied on the State Agency opinions as reason to discredit the treating source opinions, he did not follow precedence [*sic*]."  (*Id.*)  A plain reading of the administrative decision reveals that ALJ Gates did not so much as reference the consultants' opinions as justification for discounting the opinions of Drs. Kistler and Hackshaw, let alone *rely* on those opinions.  Plaintiff's argument related to the relative weight given the State agency medical consultants' opinions, therefore, fails.

Plaintiff next argues that ALJ Gates overemphasized the fact of Dr. Hackshaw's conservative treatment of Plaintiff's condition.  Dr. Hackshaw's treatment notes show that he consistently prescribed medication, and recommended diet and exercise with the goal of weight loss, to ease Plaintiff's symptoms.  Dr. Hackshaw regularly saw Plaintiff for follow-up visits, which occurred only every six months.  This type of limited treatment course may reasonably be interpreted as contrary to the extreme restrictions Dr. Hackshaw assessed in his opinions.  *See Lester v. Soc. Sec. Admin.*, 596 F. App'x 387, 389 (6th Cir. 2015) (concluding that ALJ reasonably discounted a doctor's opined limitations where, among other things, the claimant was

receiving conservative treatment); *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x, 719, 727 (6th Cir. 2013) ("minimal and conservative treatment" is valid reason to discount severity). The undersigned therefore finds that ALJ Gates did not err in considering, among other factors, the conservative nature of Dr. Hackshaw's treatment when evaluating his opinions.

Finally, Plaintiff argues that ALJ Gates incorrectly characterized her treating physicians' opinions as inconsistent with the record. As support for her position, Plaintiff asserts that the physicians' treatment notes are consistent with their opined limitations because the notes document a long history of symptomatic fibromyalgia. Nonetheless, the existence of some evidence in Plaintiff's favor does not mean that ALJ Gates' decision to discount the treating physicians' opinions is unsupported by substantial evidence. In fact, where the record evidence could support two different conclusions, "the law obligates the court to affirm the ALJ's decision, because the ALJ is permitted to decide which factual picture is most probably true." *Waddell v. Comm'r of Soc. Sec.*, No. 1:17-cv-1078, 2018 WL 2422035, at *10 (N.D. Ohio May 10, 2018), *report and recommendation adopted*, No. 1:17-cv-1078, 2018 WL 2416232 (N.D. Ohio May 29, 2018); *see also Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) ("The substantial-evidence standard allows considerable latitude to administrative decision makers. It presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.") (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)). Plaintiff further argues that the opinions of consultative examiner, Dr. Howard, and workers' compensation medical referee, Dr. Rohner, are consistent with the treating physicians' opined limitations. Review of these opinions, however, demonstrates that the opposite is true. Dr. Rohner opined that Plaintiff was capable of sedentary

work and would likely be able to engage in more substantial work after re-conditioning and physical therapy. Dr. Howard opined several years later that Plaintiff was capable of light work, despite her history of fibromyalgia. Notably, Plaintiff does not address ALJ Gates' finding that the opinions of Drs. Kistler and Hackshaw are inconsistent with the USPS OIG investigative report. As noted above, that report summarizes Plaintiff's physical activity as observed over four non-consecutive days in November 2011. The investigator observed Plaintiff driving; carrying, lifting, and loading bags; raising and lowering the tailgate of her SUV one-handed; and repeatedly bending down to retrieve items off the ground—all without any indication of pain or discomfort. These observations, collected while Plaintiff was unaware of watchful eyes, are plainly incongruent with the severity of limitations in the treating physicians' opinions. The undersigned is therefore unpersuaded by Plaintiff's argument.

In sum, it is **RECOMMENDED** that Plaintiff's first contention of error be **OVERRULED**.

## A.     ALJ Gates Properly Considered and Accounted for Plaintiff's Fibromyalgia

Plaintiff next contends, as best the undersigned can discern, that ALJ Gates failed to properly consider Plaintiff's fibromyalgia under Social Security Ruling 12-2p, resulting in his failure to incorporate limitations related to Plaintiff's fibromyalgia into the RFC. (Pl.'s Statement of Errors at 9, 13, ECF No. 11, 13.) The undersigned disagrees.

As the Sixth Circuit has explained:

On July 25, 2012, the SSA released SSR 12-2p . . . , which "provides guidance on how we develop evidence to establish that a person has a medically determinable impairment of fibromyalgia, and how we evaluate fibromyalgia in disability claims. . . ." [SSR 12-2p, at *1.] To that end, SSR 12-2p describes criteria for establishing that a person has a medically determinable impairment [ ] of fibromyalgia, *id.* at *2–3, the sources of evidence the ALJ may look to, *id.* at *3–4, and how a claimant's subjective assertions of pain and functional limitations are evaluated, *id.* at *4. [SSR 12-2p] also states that fibromyalgia should be analyzed under the traditional five-step evaluation process used for analyzing other claims

for SSI. *Id.* at *5–6. Importantly, . . . SSR 12-2p . . . merely provides guidance on how to apply pre-existing rules when faced with a claimant asserting disability based on fibromyalgia.

*Luukkonen v. Comm'r of Soc. Sec.*, 653 F. App'x 393, 398–99 (6th Cir. 2016). The Sixth Circuit has further acknowledged that fibromyalgia is "elusive" in that "unlike medical conditions that can be confirmed by objective testing, fibromyalgia patients present no objectively alarming signs." *Rogers*, 486 F.3d at 243 (quoting *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 990 (N.D. Ohio 2003)). "Nonetheless, a *diagnosis* of fibromyalgia does not automatically entitle [a claimant] to disability benefits . . . ." *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 806 (6th Cir. 2008) (emphasis in original) (citing *Sarchet v. Chater*, 78 F.3d 305, 306–07 (7th Cir. 1996) ("Some people may have a severe case of fibromyalgia as to be totally disabled from working . . . but most do not and the question is whether [claimant] is one of the minority.") (citations omitted)). Accordingly, in cases involving fibromyalgia, an ALJ must "decide . . . if the claimant's pain is so severe as to impose limitations rendering her disabled." *Swain*, 297 F. Supp. 2d at 990.

Here, ALJ Gates determined at step two of the sequential evaluation process that Plaintiff's fibromyalgia constituted a severe impairment as of the date she was last insured. (R. at 21.) At step three, ALJ Gates noted that he "considered the claimant's fibromyalgia under Social Security Ruling 12-2p." (*Id.* at 23.) ALJ Gates applied the two-step process to evaluate Plaintiff's statements about the severity of her condition and found that those statements were not entirely consistent with the medical evidence. (*Id.* at 23, 24.) The administrative decision reflects that ALJ Gates engaged in a thorough review of the *extensive* administrative record— which includes nearly a decade's-worth of evidence ranging from clinical findings, to medical opinions, to investigative reports, to Plaintiff's own testimony—in so finding. Nevertheless, ALJ Gates found that Plaintiff's fibromyalgia symptoms (*e.g.*, "fatigue, pain, and some infrequently

diminished range of motion") sufficiently limited her ability to engage in work-related activities such that certain postural limitations should be included in the RFC. (*Id*. at 25.) Plaintiff does not propose specific additional limitations that result from her fibromyalgia and are not incorporated into the RFC. The undersigned finds no error in ALJ Gates' consideration of Plaintiff's fibromyalgia. *Cf. Luukkonen*, 653 F. App'x at 399 (dismissing plaintiff's argument that the ALJ failed to properly apply SSR 12-2p because any resulting error would have been harmless where the ALJ considered plaintiff's fibromyalgia a severe impairment at step two). As a result, it is **RECOMMENDED** that Plaintiff's second contention of error be **OVERRULED**.

## B.     ALJ Gates' RFC Determination is Supported by Substantial Evidence

The third and final issue Plaintiff raises in her Statement of Errors (ECF No. 11) is that ALJ Gates' determination of her RFC is not supported by substantial evidence. (Pl.'s Statement of Errors at 9, ECF No. 11.) Again, the undersigned disagrees.

As previously noted, ALJ Gates assessed Plaintiff's RFC as follows:

Through the date last insured, the claimant had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. 404.1567(b) except she could frequently climb ramps and stairs, and occasionally stoop, kneel, crouch, and crawl, but never climb ladders, ropes, or scaffolds. She needed to avoid workplace hazards.

(R. at 23.) ALJ Gates explained:

[T]he record generally documented substantially normal exam findings except for some findings of tender points on exams. Because of the claimant's fatigue, pain, and some infrequently diminished range of motion, she would have reasonably been limited to light exertion with no more than frequent climbing of ramps and stairs, more than occasional stooping, kneeling, crouching, and crawling, and no climbing of ladders, ropes, or scaffolds. Because of her obesity, fatigue, and pain, she needed to avoid workplace hazards. This RFC is less restrictive than the RFC identified in the prior decision due to new and material evidence since that decision, including fulltime work activity after that decision. While the record documents new impairments and an alleged new workplace injury, the above-summarized record documents that she engaged in rather significant activities of living and

performed relatively significant exertional, manipulative, and postural activities that were inconsistent with her subjective report of limitations, and, even if one assumed that she were still limited to sedentary work, she still would not be disabled. There is no documentation of a medically determinable mental impairment of at least a year in duration during the period at issue.

(*Id*. at 25–26.)

ALJ Gates considered the evidence of record in assessing Plaintiff's RFC and ultimately concluded that Plaintiff is not as limited as she claims. (*Id*. at 24.) ALJ Gates relied on the State agency medical consultants' recommendations to craft Plaintiff's RFC, as they were "most consistent with the overall record and supported by the medical evidence of record." (*Id*. at 26.) ALJ Gates adopted the State agency medical consultants' recommended abilities and limitations as the RFC. The undersigned finds that such decision was within the permissible "zone of choice" and the assessed RFC is supported by substantial evidence. *Mullen*, 800 F.2d at 545.

Plaintiff argues that there is "an inherent inconsistency between the RFC and the medical evidence of [Plaintiff's] physical ability." (Pl.'s Statement of Errors at 15, ECF No. 11.) She asserts that "[t]he medical evidence does not support [Plaintiff's] ability to work eight-hours a day, full-time." (*Id*.) In doing so, she relies heavily on evidence that ALJ Gates reasonably dismissed or discounted, as described, *supra*, in depth. Plaintiff's argument is therefore unavailing.

It is **RECOMMENDED** that Plaintiff's third contention of error be **OVERRULED**.

## VI.    DISPOSITION

In sum, from a review of the record as a whole, the undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. For the foregoing reasons, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

# VII. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE